FILED
U.S. DISTRICT COURT
2005 JUL 25 AM 11: 17
SO. DIST. GA.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# STATESBORO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR604-27 |
| ) | |
| GARY ALEXANDER MATTHEWS, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Defendant has filed a motion in limine to exclude statements he made during a custodial interview, which the Court has construed as a motion to suppress. Doc. 35. The Court held an evidentiary hearing on July 21, 2005, at which time the government offered the testimony of Agent Robert Shore, Deputy Commander of the East Central Georgia Drug Task Force, and Brad Hart, formerly of the East Central Georgia Drug Task Force. Defendant also testified. For the reasons that follow, the Court finds that defendant's motion should be DENIED.

# I. BACKGROUND

On February 4, 2005, defendant was seated in the driver's seat of his vehicle at the McDonald's drive-through when Hart approached him and engaged him in conversation. As explained in the Court's April 12, 2005 Report and Recommendation (doc. 24), Hart approached the vehicle based on his belief that an individual named Joseph Durden was in the car. Hours earlier, Durden had fled police when they witnessed Durden engaged in what they believed to be a drug transaction.

Through his conversation with defendant, Hart developed concern for his safety and asked defendant to exit the vehicle. At the same time, pat down searches of the two other occupants of the car, Durden and Vindia Raiford, revealed drugs. When Hart attempted to put defendant in handcuffs based on his suspected involvement with drugs, defendant resisted and several officers had to force him to the ground. Defendant continued to resist, but after having a taser applied to his body three times, the officers were able to handcuff and arrest defendant. Once defendant was handcuffed, the officers lifted defendant from the ground and discovered a fully loaded firearm on the ground where defendant had been

lying. A subsequent search of defendant's car revealed marijuana, cocaine, and ammunition.

As a result of being stunned with the taser, defendant complained of pain in his back. Accordingly, Agent Shore directed that defendant be taken to Meadows Regional Medical Center where his health could be checked before he was taken to the Toombs County Detention Center. Defendant arrived at the hospital shortly after 9:00 p.m. Defendant was treated at approximately 10:00 p.m. As part of his treatment, defendant was administered injections of haloperidol (Haldol) and lorazepam (Ativan). At 11:00 p.m., defendant was discharged and transported to the detention center. Defendant was not administered any more drugs at the detention center that night or the following day. At some time after his discharge, an Officer Colson of the Vidalia Police Department issued citations to defendant for driving with an expired license and for his failure to wear a seatbelt, and Colson noted on the citation that defendant was unable to sign the citations because he was medicated.

At about 5:30 p.m. the following day, Agents Shore and Hart went to the detention center to interview defendant. At that time, defendant was

taken to an interrogation room where he was allowed to sit on a stool. He was not handcuffed or otherwise restrained. Agents Shore and Hart were not armed and were also seated.

Agent Shore asked defendant a number of general questions, such as his name, date of birth, and place of residence. According to Agent Shore, defendant answered his questions with ease. Defendant appeared to have his wits about him, was calm, and seemed to understand the questions. Agent Shore testified that defendant did appear to be slightly sleepy, but not any more so than the average inmate. Defendant did not appear to be under the influence of drugs. His speech was not slurred. He had no trouble remaining seated on the stool.

After asking defendant a number of general questions, Agent Shore read defendant his <u>Miranda</u> rights. Defendant stated that he understood his rights, signed a waiver, and agreed to answer questions. In his statement, defendant denied possession of the discovered firearm. There is no evidence that defendant was ever threatened of physically coerced during the interview. There is no evidence that defendant at any time requested a break or asked that the interview be stopped.

## II. ANALYSIS

In his motion, defendant asks the Court to exclude from evidence at trial the statements that he allegedly made to Agent Shore and Hart on February 5, 2005. As grounds for suppression of his statements, defendant testified that he has no memory of the interview and contends that if it did in fact occur, any waiver of his rights was not knowingly, voluntarily, or intelligently made. Defendant asserts that the medication administered to him at the hospital impaired his ability to understand the nature of his rights.

The Court first notes that it credits the testimony of Agent Shore and Hart and finds that defendant was in fact interviewed by them at about 5:30 p.m. on February 5, 2004. The Court further finds that defendant signed a <u>Miranda</u> waiver after having been advised of his rights and that the statements recounted in Agent Shore's notes is a reporting of statements defendant made during the interview.

The Court does not credit defendant's testimony that the medications administered to him at the hospital left him unable to recall that an interview had even taken place. Not only does the Court find it highly

unlikely that the medications defendant took would have had such an effect over 17 hours after they were administered, but defendant's claim is also called into question by his own testimony that though he could not remember the interview that occurred at least 17 hours after the pain medications were administered, he clearly remembers being photographed and fingerprinted just an hour or two after leaving the hospital – about the same time he was issued the traffic citations by Officer Colson. Accordingly, the Court finds that defendant was not mentally incapacitated at the time of the interview due to the medications given to him the night before.

The Court further finds that defendant's waiver of his Miranda rights was voluntarily, knowingly, and intelligently made. A Miranda waiver is voluntary if "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Colorado v. Spring, 479 U.S. 564, 573 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). There is no evidence to suggest that defendant was ever intimidated by Agent Shore or Hart. Neither officer was armed during the interview and they never made any verbal or physical threats to defendant.

There is also no evidence of actual coercion. Coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce confession. Connelly, 479 U.S. at 163 n.1; United States v. Jones, 32 F.3d 1512, 1517 (1994). According to Agent Shore's testimony, the interview lasted about thirty minutes. Both officers denied that any physical force was used. There is no evidence that any promises were made to defendant.

Lastly, there is no evidence that the officers attempted to deceive defendant in any way in order to induce his statement. Rather, the evidence indicates that defendant's waiver was voluntarily made.

The evidence further indicates that the waiver was both knowing and intelligent, as it was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). As stated previously, the Court does not credit defendant's testimony that the medications administered to him approximately 17 to 18 hours before the interview left him too "out of it" to know what was happening, or even to remember that an interview occurred.

Moreover, the testimony of both Agent Shore and Hart supports a finding that defendant's waiver was knowing and intelligent. The officers testified that defendant appeared to have his wits about him, that he appeared to understand what they were saying, and that he responded to questions regarding his biographical information quickly and without hesitation. Defendant did not have trouble staying seated on a small stool and did not appear to be overly drowsy. Defendant appeared to be aware of what was taking place and to understand what the officers were saying to him. There is no credible evidence to suggest otherwise.[1]

## III. CONCLUSION

For the foregoing reasons, the Court recommends that defendant's motion in limine be DENIED.

**SO REPORTED AND RECOMMENDED this 25th day of July, 2005.**

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[1] The Court also finds it notable that the statements made by defendant do not incriminate him in this case. He denied possession of the firearm, stated that it was not his, and claimed that he did not know how it ended up underneath him. In light of this fact, it is not clear to the Court what purpose this statement might serve the government or why this hearing was even necessary.

8

# United States District Court
## Southern District of Georgia

UNITED STATES OF AMERICA     *

           vs.     *     CASE NO. CR604-27

Gary Alexander Matthews     *

The undersigned, a regularly appointed and qualified deputy in the office of this Clerk of this District, while conducting the business of the Court for said Division does hereby certify the following:

1. Pursuant to instructions from the court, and in the performance of my official duties, I personally placed in the U.S. Mail a sealed envelope bearing the lawful frank of the Court, and properly addressed to each of the persons, parties or attorneys listed below; and

2. That the aforementioned envelope(s) contain a copy of the documents known as R&R and Order dated 7-25-05, which is part of the official records of this case.

Date of Mailing: 7-25-05
Date of Certificate: 7-25-05

SCOTT L. POFF, CLERK

By _____

NAME:
1. Gary Matthews, Bulloch County Jail, 17301 US Highway 301 North, Statesboro, Ga. 30458
2. Hal Roach, Jr., P O Box 1105, Statesboro, Ga. 30459
3.
4.
5.
6.
7.

Cert/Copy
- ☐ ☐ District Judge
- ☐ ☒ Magistrate Judge
- ☐ ☐ Minutes
- ☐ ☐ U.S. Probation
- ☐ ☐ U.S. Marshal
- ☐ ☒ U.S. Attorney
- ☐ ☐ JAG Office

Cert/Copy
- ☐ ☐ Dept. of Justice
- ☐ ☐ Dept. of Public Safety
- ☐ ☐ Voter Registrar
- ☐ ☐ U.S. Court of Appeals
- ☐ ☐ Nicole/Debbie
- ☐ ☐ Ray Stalvey
- ☐ ☐ Cindy Reynolds